Good morning, your honor. May it please the court. Assistant U.S. Attorney Marshall Silverberg. First of all, we'll start on the Evans v. Martinez case. Yes, there is no mandate by the court. However, we would argue that the issue in Evans-Martinez case, as well as our case, the Foulahahina case, is virtually identical. As the government conceded in the previous case, there should have been notice. Then the question becomes whether the error was plain. We would argue yes, because 32H does specifically state that notice is required. According to the Hernandez case, it does state that no later than the beginning of the sentencing hearing, notice is to be given. If at that point, the defendant feels that he would need more time to properly prepare some kind of adversarial testing of the contemplated upward departure by the sentencing court, he could, or she could, at that point, ask for a continuance for more time. That would preserve the integrity of the judicial process, as well as fairness and respect for the courts, which is what the Supreme Court Burns case did state when it established that there was a notice requirement. And as a result, there was the amendment to Rule 32 to put in the reasonable notice requirement. Now, I guess the question also may be, in addition to Rule 32H requiring that notice, all of the sister circuits seem to indicate that pre-Booker, as well as post-Booker, you still need to give that notice. And in this case, we would argue, Your Honor, that since no notice was given, that constitutes plain error, and therefore, the sentence and the case should be remanded for resentencing to provide the opportunity for Mr. Paula Mahina to test the sentencing court's contemplated upward departure. Now, when the sentencing court stated the reason why it was departing upward was because the defendant was, after his second robbery, he was arrested, counseled, and then released, in reviewing the record, and specifically the pre-sentence report, the only reference I could find in there that related to he being arrested, released, or counseled, and then released, was when Mr. Paula Mahina was taken to the family court in regards to that second robbery. However, however, when he was taken to family court on that second robbery, he was already in custody, and therefore, there wouldn't have been an error on the sentencing court's finding if it were to say that the point it was relying upon to depart upward was that he was arrested, counseled, and then released, because he was already in custody at that point. The other arguments that we did raise in terms of whether the sentence is reasonable or not, we would argue that it is not, because if you look at the sentencing range of 63 to 78 months, the upward departure to 120 months is almost double. From the lower end of the sentencing range, and also, according to the NICS case, there was not any proper analysis of Section 3553A in terms of the characteristics of the defendant, the characteristics of the crime, the need to protect the public, and all of the other factors in Section 3553A. Are there any questions? If not, Ms. Yonner? I was looking at the plea agreement, which is, in a way, is a rather odd plea agreement, but it states in there, in effect, that you couldn't appeal if the sentence was within the statutory maximum. Your Honor, if I recall correctly, the plea agreement does limit the right of appeal of Mr. Forlamagina, and he can only appeal the portion over and above the guideline range. It said that, but it also said that you couldn't appeal if it wasn't within the statutory maximum. Is that right? What was that language in there for? Because it's inconsistent with the, that he could appeal anything over that guideline range. Yes, Your Honor, that does appear inconsistent. However, the sentencing court, after it rendered its sentence, did specifically state and advise Mr. Forlamagina that he did have the right to appeal his sentence, the portion related to the upward departure part, and that was also confirmed by Assistant U.S. Attorney Marshall Silverberg. Your Honor, if there are no further questions, I'll reserve the remainder of my time for rebuttal. All right. Good morning again, Your Honors. Marshall Silverberg for the United States. Judge Fletcher, I'm a little confused. I don't know where you saw that in the plea agreement. I think, without doubt, the defendant has a right to appeal the portion of the sentence. Well, it looked like it in one portion, but then there's this reference to he couldn't appeal if it wasn't over the statutory maximum. It's there, isn't it, anywhere, but you concede that he can appeal. Yes, Your Honor, we do. Just the portion that is the 42 months from the top of the range, not, you know, then you go to the bottom of the range. You look at the portion from the top of the range. In terms of the evidence, Martinez's decision, again, I understand the mandate has an issue, but assuming that the mandate does issue and it does become the law of the circuit, we would concede then the first three parts of the plain error test, but not the fourth part. That is, we don't believe that the error here, even if it's plain, seriously affects the fairness, integrity, or public reputation of the judicial proceedings. And it's very simple. In evidence, Martinez, as the Court knows, the defendant went into the sentencing thinking that there's a mandatory minimum sentence of 10 years. The government has indicated it's going to move for a downward departure. The government did do that. The court did do a downward departure and then did an upward departure to the 15-year sentence. That didn't happen here. The government never made an indication that it was going to move for a downward departure. In fact, we informed the counsel that we intended to play the videotape of the robbery to show the court, how it went down and the conduct that was committed, that we had every intention of asking for the sentence at the top of the range. In fact, that's what we did ask for, the sentence at the top of the range. And the facts that the court relied upon regarding the defendant being counseled after the second robbery, in fact, in the plea agreement, the defense stipulated that after this, meaning the second robbery, quote, after this, I ain't doing no more crimes, end quote, was the fact stipulated by the defense that the defendant made that statement after committing the second robbery. So that, combined with the fact that the pre-sentence report indicated that he was counseled and released after that arrest, was not in dispute. Those factual findings were adopted by the court in adopting the pre-sentence report. So the basis for the court relying upon was not in dispute. We don't see how the defendant in this case, unlike Evans-Martinez, could possibly have gone into sentencing thinking he's going to wind up with a sentence below the guideline range. In anything, he had to go in there thinking under 3553A, he might very well get a sentence above the range. Granted, he probably did not anticipate that the court would do an upper departure. And again, this was in that time period after Booker where the interplay between the guidelines and 3553A was kind of still up in the air. But we believe that under 3553A, the court would have been fully within its right to impose the same sentence. The factors set forth there include that the sentence should reflect the seriousness of the offense to promote respect for the law and to provide just punishment for the offense. So in particular, to promote respect for the law, this is somebody who committed three robberies, is arrested after the second robbery, is told, hey, buddy, you know, we're going to let you out on bail and not bring you before the court at this time. And he says, I understand, I ain't going to commit any more crimes, then nonetheless commits the third robbery, would have been within that first factor under 3553A, well within the court's discretion to impose the same exact sentence. So that's why we think under the fourth, in essence, the fourth test of the plain error test, as set forth in Evans, Martinez, and many other cases, that this sentence did not affect the fairness, integrity, or public reputation of the judicial proceedings because the sentence that was imposed was a fair one. It did reflect that the defendant committed three robberies, not just one. The co-defendant received a sentence within that range. He was only convicted of the one robbery. This defendant, the co-defendant, in this case, Mr. Folo Martinez, committed three robberies. So surely a sentence for three robberies under 3553A could be justified as being greater than a sentence for one robbery, especially when you're caught after the second one and you're canceled and you let go and you say, I'm not going to do it anymore, and then you go ahead and you do it again. If, assuming Evans, Martinez holds, do we have a system where the district court, in calculating the guideline range, has to give notice if it's going to depart upward from the guideline range, but it would be free, in your view, to say, well, all right, I've calculated the guideline range. Now, the guidelines are only advisory. I'm not going to pay any attention to them beyond having just calculated them. I mean, I've taken their advice. Now I'm just going to establish a 3553 sentence. And it turns out it's well above the guidelines. Does he have to give notice if he's going to do that? Well, preliminarily, I don't think the court could just say, I calculated the guideline range and I'm not going to take them into account. I think the case is so clear they have to take that into account. I guess you've got to take it into account, but I'm not going to be limited by it. Well, that's right. And that goes on every day, you know, five blocks from here where, you know, dependents are being sentenced every single day. And more often than not, they're winding up with sentences below the guideline range under 3553A. One judge in particular. But I think you're absolutely right. What's the name of that judge? Well, it's a woman judge who's not the chief judge, Judge Mulway. And 3553A does give her a lot more discretion than they had pre-Booker. I don't think there's any question about it. And I believe there's the same discretion that Judge Ezra has to go above the guideline range or Judge Gilmore or any other district judge in the United States. And there is no statement in Rule 32H that says that the court has to give notice that it intends to go above the guideline range under 3553A. And if it's happening here, I assume it's happening across the circuit and across the United States. I wonder what teeth Evans-Martinez will have if you don't have to give notice. One way to read Evans-Martinez would be to say, look, if the sentence is going to be above the properly calculated guideline range and the court is considering doing that on its own motion, it has to give notice. Whether you call it an upward departure or you call it a reasonable sentence under 3553A. That would be one way to make sense out of this. Otherwise, it's just which words the court utters as to whether it is to give notice or not. Whatever the judge says, my policy is to times to go above and times to go below. I think the only way. Well, and we are. In fact, the word we're getting from the court is that we need to be better prepared in going in to argue at sentencing the 3553A factors. And the word we're hearing is that up until now, the defense has been better prepared at doing that than the government has, at least in our district. And so we're adapting like everybody else is adapting in this post-trial world. And there's nothing in Rule 32H. Now, maybe it'll take another decision like Burns to say that any sentence above or below the advisory range under 3553A somehow requires notice in advance. But I don't think Burns can do that at this point. I don't think you can rely upon Burns to say that. And indeed, 32H was enacted because of the Burns decision. But it only deals with the guidelines and with the guidelines now being advisory. I think some of us thought that departures were no longer in our vocabulary even. And certainly, I think some of the earlier post-booking decisions had that, especially at the district court level. And then there were decisions saying, well, the courts don't have to specifically mention 3553A in terms of imposing sentencing. But I'll tell you, now every sentencing, either the court does it on its own or counsel will stand up or the probation officer will say, is the court taking into account the 3553A factors? And they'll say, of course it is, because we're all, again, adapting to the post-booker world. So at this point, at the time of this sentencing, it was certainly unclear whether or not Rule 32H still required notice, because there was no decision that said that. In fact, there was a footnote in the Ninth Circuit that left that issue open. But if this case came before the court, again, I'm speculating, but if this case does get remanded, I don't think there's anything that would prevent Judge Ezra or any judge from imposing the same sentence on the 3553A, because the crime warranted it, the factors are there, and different words will be used. But in essence, I think the court would be fully justified. We're really assuming that when the judge goes out there at sentencing, he's already decided what the sentencing is going to be, and all this talk out there is just window dressing. In this case, it really didn't. I mean, he's got to come in and say, oh, yeah, it's going to go above. Well, let's hear the argument. Then you'll get my decision. You know what I'm saying? I think in some cases, and you would know obviously much better than I would. In some cases, it's a lot harder to adjust to the post-guideline world than it will ever be to adjust to the getting away from the pre-booker world. Does that make you sleep better? Well, it's almost back to the days of the pre-guideline world. That's right. Those were the good days. A lot of judges believe that, I know. What? A lot of judges, I know. I clerked for Judge Mishler in New York, and he liked that discretion that he had. It was all pre-guidelines in those days. What they would do is circulate the proposed sentence. All the guidelines did was give a hunk of that discretion, take it away from the district judge, who presumably has had more life experience, and give it to a young U.S. attorney who is looking to make a record for himself. That's what it comes down to. I think that's true to some extent, but personally, I passed that about 15 years ago. It's refreshing to hear you talk, really. Well, one of the last second medal I'd give it to you. Thank you. I've got a transcript from my supervisor. You're saying that everything had turned out the same. I suppose the theory of Evans-Martinez is, well, if you have a little notice, you can have more adversary testing. A defense could argue that, well, look, when somebody has been given a chance after the second robbery and then commits another one, that's analogous to committing a third robbery when you're on probation, after the probationary sentence from the previous robbery, and that would be 108 months, not 120. That was the argument I made, and I obviously agree with that. In fact, the defendant argued we should not have received his acceptance of responsibility and three-level reduction, as I indicated, when he said that he did not know the identity of the fourth robber. And I thought to some extent, although Judge Ezra didn't say that, to some extent that's what was going on here, was that the defendant stood in front of him and said, I don't know the identity of the fourth robber. And the judge said, well, I just don't find that credible. You go out and you rob a store with somebody you don't even know his first name. I mean, how are you going to call him? Hey, you take that over there and I'll take that over here. There's got to be some kind of way of communicating with a fellow robber. I don't know, though, how, if we take this argument very far, we're going to have to say you're going to have to appeal those denials of upper adjustments. If they're going to crop up in the back door. Well, the plea agreement specifically provides that the government is stipulating to acceptance of responsibility unless new information came about. And then when the defendant stood up and said that I didn't know his name, I came very close to standing up. We now withdraw our acceptance of responsibility. And if the case was remanded, I would do absolutely that. You should know that the co-defendant who was sentenced immediately after this, he was asked the same question. He said, what is the name of the false robber? He said to the judge, I'm not going to tell you. I know who it is. I'm just not going to tell you. We think it was his brother. But he said, I'm not going to tell you. And the judge did not do an upper departure. He sentenced him within the range. There's no appeal. And I think being honest and saying I'm just not going to tell you is a lot different and a lot more acceptable than saying I don't know what it was. I mean, that simply was incredible. And it might very well have been that he went first and the other guy went second. And he, you know, hurried in the outside of the courtroom. You know, don't say anything rather than lie to the court. Because the lying to the court, I think, is what really made an impression on the court here. Yeah. No, we thought that in this supposed broken world that we would just be trying to decide whether a sentence was reasonable. And I think we're kind of straying away. Well, and again, we addressed the reasonableness issue in the brief. And as I've argued here, this fellow that committed three robberies, increasing violence at each one, the third one there being something that looked like a gun, we still don't know for sure whether it was a BB gun or a real gun, but it certainly looked like a real gun, suggested that a sentence higher than the person committed only one robbery was warranted, especially after being arrested after the second one and counseled. OK. Thank you very much. Any rebuttal? OK. Just a few points, Your Honor. First, in regards to the fourth point, as far as the plain error. Yes, the fairness, integrity or public reputation of the judicial proceedings was compromised by not having a 32-H notice because the advisory guidelines said 63 to 78. That's what everybody expected. The government was going to argue at the higher end of the range. There was no indication anywhere in the record that there was going to be an upward departure to 120 months. Prior notice due process is essential to our process here. What would you have done if you had that notice? Well, if we did have that notice and the specific ground that was being relied upon, if it was based upon his second arrest, you know, we could possibly interview, subpoena the police officers involved. We could also do additional investigation to see who possibly were the other victims to determine whether or not the second robbery and the arrest, counseling and the release of him would be sufficient for the court to see that is a reason for an upward departure. The adversarial process of the sentencing hearing is essential. And that's what the Burns court was specifically relying upon and did mention when there was the amendment to 32-H. I refresh my memory when Judge Ezra imposed this sentence. But was there a 32-H, to object under 32-H? No, Your Honor. We did not object under 32-H. Basically what happened is when a judge started to give his sentence, then he relied upon this being arrested after the second robbery and then went right into his upward departure of 120 months without skipping a beat. So we did not object. There is a question whether we even would have had the opportunity to object according to the amendment. Your Honor, we have this matter of 32-H and that hasn't been complied with. Maybe you could withdraw the sentence and set it for another time and give us a chance. Come back now that we know you're going to be departing upward. Yes, Your Honor. In hindsight, that is 2020. Hindsight is 2020. We could have done it. But according to 32-H and the Hernandez case, the notice was to be given at the beginning of the sentencing hearing at the very latest. And that was not done. Well, did you know about 32-H at the time of Sam Singh? Not as much as I do now. Good answer. Good answer. Are there any other questions? Thank you, Your Honor. Thank you. Well, we take up a nice day.
judges: Goodwin, B. Fletcher, Fisher